Dennis PRINCE, Individually and as administrator of the Estate of Margie Prince, et al., Plaintiffs,

v.

The PITTSTON COMPANY, a Delaware and Virginia corporation, Defendant.

Civ. A. No. 3052 HN.

United States District Court,
S. D. West Virginia,
Huntington Division.

May 13, 1974.

Gerald M. Stern, of Arnold & Porter, Washington, D. C., Willis O. Shay, of Steptoe & Johnson, Clarksburg, W. Va., for plaintiffs.

Daniel R. Murdock, of Donovan, Leisure, Newton & Irvine, New York City, Zane Grey Staker, Kermit, W. Va., William T. O'Farrell and Robert L. Elkins, of Jackson, Kelly, Holt & O'Farrell, Charleston, W. Va., for defendant.

### MEMORANDUM ORDER

K. K. HALL, District Judge.

This action is before the Court at this time on defendant's motion for partial summary judgment to dismiss personal injury claims of 33 plaintiffs who were residents of but absent from the Buffalo Creek area on the morning of February 26, 1972, when a flood ravaged the valley. Rule 56(b) and (c), Federal Rules of Civil Procedure. In their memorandum in support of the motion, counsel for defendant state:

. . . Defendant believes that it is entitled to the relief requested as a matter of law because there is no genuine issue as to the material facts that none of the thirty-three plaintiffs was physically injured in the course of the flood on Buffalo Creek on February 26, 1972, that none was threatened with immediate physical injury by the flood, and that none witnessed any other person sustaining a physical injury in the flood. . . .

Counsel refer to the 33 plaintiffs as "Absent Plaintiffs", explaining that they "were far removed from any threat of physical harm and witnessed none to anyone else." Counsel reason that "Under these circumstances, none of the personal injuries asserted by these plaintiffs, even if sustained, could be found to be proximately caused in law by the alleged tortious conduct of the defendant." Defendant's memorandum of law, at page 2, indicates the whereabouts of the 33 absent plaintiffs in the following language:

. . . As will be seen from their own testimony and interrogatory answers, during the flood some of the Absent Plaintiffs whose personal injury claims are here involved were in jail or in hospitals in other parts of the state. Still others were out of the state in Florida, Kentucky, Ohio, Maryland and even New Mexico. While some of the Absent Plaintiffs were only a mile or so from Buffalo Creek hollow, it is clear that they, as all the other Absent Plaintiffs, were far removed from any threat of physical harm and witnessed none to anyone else.

Plaintiffs do not controvert this statement and no further explanation of the location of the 33 plaintiffs on the morning of February 26, 1972, need be made.

Plaintiffs' first amended complaint, to which defendant's motion for partial summary judgment is directed, asserts that defendant's Buffalo Creek coal mining operations included a "burning refuse pile" located near the mouth of

Middle Fork, a tributary of Buffalo Creek, "plus three refuse piles used as dams along the Middle Fork above this Burning Refuse Pile." (Paragraph 11) Paragraphs 31 and 32 of the amended complaint assert the following:

31. The defendant's acts and failures to act, as alleged above in paragraphs 6 through 30, were negligent, grossly negligent and in wanton, willful, reckless and intentional disregard of the lives and property of plaintiffs and plaintiffs' decedents.

32. On February 26, 1972, as a direct and proximate result of the defendant's negligence, gross negligence, and wanton, willful, reckless and intentional disregard of the lives and property of the plaintiffs and plaintiffs' decedents, as alleged above in paragraphs 6 through 31, Dam 3 failed, Dams 1 and 2 failed, the burning refuse pile exploded, and an estimated 130 million (130,000,000) gallons of water and about one million (1,000,000) tons of refuse material descended upon the persons and property downstream of Dam 3—killing at least 118 men, women and children, some of whom are still missing; seriously, and in many cases, permanently, injuring thousands of persons in body and mind; totally destroying over five hundred homes and over forty mobile homes; damaging over 250 additional homes; . . . .

Defendant's memorandum in support of its motion for partial summary judgment details the five causes of action asserted by plaintiffs as bases of recovery herein. Plaintiffs' complaint, following assertions in the second and third causes of action, charges that "defendant is absolutely liable, as a matter of law, for the damages suffered by plaintiffs, and plaintiffs' decedents." In the fourth and fifth causes of action plaintiffs, following factual allegations, assert that "defendant is liable, as a matter of law, for the damages suffered by plaintiffs and plaintiffs' decedents as a direct and proximate result of the defendant's violations" of federal and state safety regulations.

The last paragraph of defendant's motion for partial summary judgment states:

In support of this motion, defendant refers to the complaint, to the answers of said plaintiffs or members of plaintiffs' families to the interrogatories of the defendant, and the discovery depositions of said plaintiffs or of members of plaintiffs' families all sworn to, which are on file in this action in this Court.

Counsel for defendant presented a memorandum of law and a reply memorandum of law in support of defendant's motion. Plaintiffs' counsel have presented a memorandum of law in opposition to the motion and a letter memorandum of law in response to defendant's reply memorandum of law.

 Jurisdiction of this action is based on diversity of citizenship and amount in controversy. 28 U.S.C. § 1332. The substantive law of West Virginia will be applicable in the action. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); Wright, Law of Federal Courts, § 55 (1970).

The single basic issue to be determined hinges on the application of the language of Rule 56(c), Federal Rules of Civil Procedure, to the action in its present posture. The second sentence of Rule 56(c) provides:

. . . The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. . . .

The parties cite and reason concerning the application of Monteleone v. Co-Operative Transit Co., 128 W.Va. 340, 36

S.E.2d 475 (1945). The single syllabus point in that case holds:

> There can be no recovery in tort for an emotional and mental trouble alone without ascertainable physical injuries arising therefrom, due to nervous shock suffered by being exposed to contact with a live high voltage electric wire through the simple negligence of the defendant, when the defendant's wrongful conduct has caused no impact resulting in substantial bodily injury.

In the body of the opinion, at pages 346–347, 36 S.E.2d at page 478, the West Virginia court summarizes the law on the immediate issue as indicated by decided cases nearly a generation ago. The court states:

> From the conflict of authority created by the decided cases in this country dealing with mental and emotional disturbances caused by the wrong of another, there appear to be but three fairly well settled principles allowing recovery: First, those mental disturbances that accompany or follow an actual physical injury caused by impact upon the occurrence of the tort; second, where there is no impact and no physical injury at the time, but a physical injury afterwards results as the causal effect of a nervous shock which in turn was the proximate result of the defendant's wrong; and third, where there was no impact and no physical injury caused by the defendant's wrong, but an emotional or mental disturbance is shown to have been the result of the defendant's intentional or wanton wrongful act. In any of the foregoing classifications we believe that the plain weight of authority sustains a recovery. There are also a few cases sustaining recovery for mental and emotional injury alone caused by the defendant's simple negligence. We believe it would serve no useful purpose at this time to discuss in detail the rather embryonic theo-

ries of the decided cases other than to comment upon the fact that their major principles, conflicting as they now are, illustrate a phase of the perpetual evolution of the common law in its effort to keep abreast of development and progress. . . .

The next year the West Virginia court decided Toler v. Cassinelli, 129 W.Va. 591, 41 S.E.2d 672 (1946). The first syllabus point of that case holds:

> Mental suffering alone will not sustain an action for damages, but if defendant by unreasonable and wilful acts or conduct has aggravated plaintiff's preexisting illness, caused plaintiff physical discomfort and unnecessary expense for which compensation lies, the mental suffering proximately caused by defendant's acts and conduct may be considered by the jury in fixing the amount of damages.

In the body of the opinion, at pages 597 and 598, 41 S.E.2d at page 677, the Court observes:

> . . . "Mental suffering alone, and unaccompanied by other injury, cannot sustain an action for damages, or be considered as an element of damages. Anxiety of mind and mental torture are too refined and vague in their nature to be the subject of pecuniary compensation in damages, except where, in cases of personal injury, they are so inseparably connected with physical pain they cannot be distinguished from it, and are therefore considered a part of it." Davis v. Telegraph Co., 46 W.Va. 48, 53, 32 S.E. 1026. The *Davis* case states the general rule, subject to certain statutory exceptions not here pertinent. In the instant case the defendant by unreasonable and wilful conduct aggravated plaintiff's preexisting illness, and caused her to suffer physical discomfort. The humiliation and mental pain may be considered as an element of damages. Chesapeake & Potomac Telephone Co. v. Carless, 127 Va. 5,

102 S.E. 569. See 1 Sedgwick on Damages, Ninth Ed., Sections 42–43. Where unreasonable and wilful action by defendant inflicts indignity, humiliation and insult on plaintiff, resulting in mental pain and suffering, they are a just basis for compensatory damages. . . .

In his opinion in Bishop v. Byrne, 265 F.Supp. 460 (S.D.W.Va.1967), the late Judge Sidney L. Christie of this Court delved into the related West Virginia law but had no occasion to detail principles and rules immediately pertinent to and applicable in this case. The Court there denied defendant's motion for summary judgment as to the tort claim involved.

No recent decisions of the West Virginia court are found stating or indicating any changes in the state's law—changes which may be considered departures from the law as announced in the 1945 and 1946 opinions above quoted.

 This Court is obliged to exercise care in granting motions for summary judgment, thereby precluding development of and appropriate findings on factual issues properly arising on the pleadings. In Phoenix Savings and Loan, Inc. v. Aetna Casualty and Surety Co., 381 F.2d 245 at page 249 (4th Cir. 1967), the Court succinctly reviews and states the law here applicable and controlling:

It is well settled that summary judgment should not be granted unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances. Neither should summary judgment be granted if the evidence is such that conflicting inferences may be drawn therefrom, or if reasonable men might reach different conclusions. 3 Barron & Holtzoff, Federal Practice & Procedure § 1234 (Rules ed. 1958). Burden is upon party moving for summary judgment to demonstrate clearly that there is no genuine issue of fact, and any doubt as to the existence of such an issue is resolved against him. 3 Barron & Holtzoff, Federal Practice & Procedure § 1235 (Rules ed. 1958).

In Kirkpatrick v. Consolidated Underwriters, 227 F.2d 228 (4th Cir. 1955), this court repeated its holding in Pierce v. Ford Motor Co., 190 F.2d 910 (4th Cir. 1951), that summary judgment under Rule 56 should be granted only where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law. This is true even where there is no dispute as to the evidentiary facts but only as to the conclusions or inferences to be drawn therefrom, and the "party opposing a motion for summary judgment is entitled to all favorable inferences which can be drawn from the evidence." Cram v. Sun Ins. Office, Ltd., 375 F.2d 670, 674 (4th Cir. 1967).

As we stated in American Fid. & Cas. Co. v. London & Edinburgh Ins. Co., 354 F.2d 214, 216 (4th Cir. 1965):

"Not merely must the historic facts be free of controversy but also there must be no controversy as to the inferences to be drawn from them. It is often the case that although the basic facts are not in dispute, the parties nevertheless disagree as to the inferences which may properly be drawn. Under such circumstances the case is not one to be decided on a motion for summary judgment."

The amended complaint in this action, as above quoted, charges that, "On February 26, 1972, as a direct and proximate result of defendant's negligence, gross negligence, and wanton, willful, reckless and intentional disregard of the lives and property of the plaintiff and

plaintiffs' decedents", damages resulted to plaintiffs. In paragraph 53 of the amended complaint, plaintiffs allege that "Pittston's actions and failures to act . . . were done wantonly, willfully, intentionally, recklessly, maliciously, consciously, and in complete disregard of the consequences of the lives and property of plaintiffs and plaintiffs' decedents; and Pittston's gross negligence and wanton, willful, intentional, reckless, conscious and malicious conduct . . . was· the direct and proximate cause of the damages suffered by plaintiffs and of the deaths of plaintiffs' decedents." Further references to and quotations from the amended complaint are considered unnecessary at this time to focus attention on the basic issue before the Court. The allegations of the complaint go beyond "simple negligence" and even beyond "unreasonable and wilful action", two descriptive and determinative expressions in the West Virginia court's decisions.

The *Monteleone* case, *supra,* stating the West Virginia law, denied recovery for plaintiff's emotional and mental troubles on the basis of defendant's "simple neligence." But the West Virginia court's opinion, as above quoted, indicated that recovery might be had for a plaintiff's emotional or mental disturbance "shown to have been the result of the defendant's intentional or wanton wrongful act."

In Toler v. Cassinelli, *supra,* decided one year later, the West Virginia court confirmed its position in the *Monteleone* case.

The Court finds no controlling departures from these statements of the West Virginia law and, in view of the language and reach of plaintiffs' amended complaint, cannot hold as a matter of law, upon defendant's motion for partial summary judgment, that no genuine issues as to material facts remain for ascertainment and determination. As the Court of Appeals of the Fourth Circuit stated in *Phoenix Savings and Loan,*

*Inc., supra,* the burden is upon the party moving for summary judgment to demonstrate clearly that there is no genuine issue of fact, and any doubt as to the existence of such an issue is resolved against the movant. A careful examination of the record before the Court compels the conclusion that the defendant here has not sustained its burden and that doubts must be resolved accordingly.

The Court is mindful that much consideration is currently given to the law relating to emotional and mental disturbances claimed to have been caused by tortious conduct of varying degrees. It is not the province of the Court to speculate or legislate. In diversity cases it is the Court's obligation and responsibility to ascertain and apply the state law. See Note, 76 W.Va.Law Rev. 176–197 (1974); Prosser, Law of Torts, § 55 (3rd Ed. 1964); American Law Institute's Restatement of the Law of Torts, 2nd, § 46, § 313, and § 436; 38 Am.Jur. 2d, Fright, Shock and Mental Disturbance, §§ 13 et seq. (1968); Annotations, 64 A.L.R.2d 100 (1959), 29 A.L.R.3rd 1337 (1970), and 46 A.L.R.3rd 772 (1972); Comment, Negligently Inflicted Mental Distress: The Case for an Independent Tort, 59 Georgetown Law Journal 1237–1263 (1971).

Upon careful review and consideration of the record herein, including discovery depositions received and other verified materials filed, together with the memoranda of counsel, the Court finds and concludes that defendant's motion for partial summary judgment must be denied. Accordingly, it is

Adjudged and ordered that the motion of the defendant, The Pittston Company, for partial summary judgment as to the personal injury claims of the 33 plaintiffs in the action, as filed on April 1, 1974, be, and it is hereby, denied.

The Clerk is directed to mail, by United States mail, a certified copy of this memorandum order to all counsel of record in the action.