**UNITED STATES of America, Plaintiff,**

v.

**Susan A. BACHMAN, Defendant.**

**No. 84–C–0125.**

United States District Court,
E.D. Wisconsin.

Feb. 11, 1985.

Ann M. Kisting, Asst. U.S. Atty., Milwaukee, Wis., for plaintiff.

Harold Harris, Harold Harris, S.C., Milwaukee, Wis., for defendant.

## DECISION AND ORDER

WARREN, District Judge.

Presently before the Court in this matter is the motion of the plaintiff, United States of America, for summary judgment, pursuant to Rule 56(a) of the Federal Rules of Civil Procedure. Invoking the Court's jurisdiction as established by 28 U.S.C. § 1345, the Government sues for the recovery of a debt incurred by the defendant, Susan A. Bachman. Specifically, the plaintiff, acting by and through the Small Business Administration ("SBA"), alleges default upon a loan made to Filters Unlimited, Inc. ("Filters"). Although demand for payment was made upon Filters, it failed to make those payments due and owing under a promissory note executed as evidence of the loan. The Government thus further claims that the present defendant, as guarantor of said loan, is liable for payment of the outstanding principal and accrued interest now owing.

By its present motion for summary judgment, the Government argues simply that under the unconditional terms of the guaranty, the defendant is clearly liable for the unpaid amounts on the SBA loan, that there are no material issues of fact disputed, and that it is thus entitled to judgment as a matter of law. In response to the plaintiff's motion, defendant Bachman asserts the affirmative defenses of novation, modification, waiver, and equitable estoppel. The defendant further argues that, as guarantor, she should be released from her obligations under the note because the plaintiff's conduct has allegedly harmed her interests. The Court, having carefully considered the opposing positions articulated by the parties, concludes, for the reasons stated below, that the present motion must be granted.

## BACKGROUND

On January 26, 1981, according to the terms of a written agreement between the parties, the SBA loaned Filters the sum of $60,000 at 9¼% interest per annum, repayable in monthly installments. It appears that the SBA accepted as collateral for the loan Filters' inventory, accounts receivable, contract rights, and certain types of its equipment. On that same date, defendant Bachman signed an unconditional guaranty which obligated her as guarantor of the $60,000 note.

The promissory note itself provides for installment payments as follows:

Interest payable monthly on disbursed principal balance, commencing one (1) month(s) from the date of this note. Installment payments of principal and interest in the amount of $1,026.00 each, payable monthly commencing seven (7) month(s) from date of the note.

Balance of principal and accrued interest to be paid on or before seven (7) years from date of this note.

Each said installment shall be applied first to payment of interest accrued to date of receipt of said installment, and the balance, if any, to payment of principal.

Significantly, the note also includes a provision for immediate payment, as follows:

Holder is authorized to declare all or any part of indebtedness immediately due and payable upon the happening of any of the following events: (1) Failure to pay any part of the indebtedness when due; (2) nonperformance by the undersigned of any agreement with, or any condition imposed by, Holder or Small Business Administration . . . or either of them, with respect to the indebtedness. . . . Holder's failure to exercise its rights under this paragraph shall not constitute a waiver thereof.

Additional terms provide that upon nonpayment of the indebtedness when due, the holder may sell the collateral at a public or private sale without notice of the time or place. Under these circumstances, the debtor is deemed to have waived all right

of redemption or appraisement before or after the sale.

The guaranty executed by the defendant provides for the unconditional payment of the principal and interest, when due by acceleration or otherwise, in accordance with the terms of the note. Under the provisions of that guaranty, the lender has the power to modify the terms of all or part of the so-called "liabilities" or the rate of interest upon them, to enter into any agreement of forbearance, and to grant extensions, renewals, and other indulgences. The guarantor is neither released nor afforded any rights or recourse against the lender as a result of any act or omission pursuant to these powers. Similarly, the obligations of the guarantor are not discharged or affected by reason of the fact that the value of the collateral may not have been correctly estimated.

From the outset, Filters, the debtor, made interest payments on an irregular basis. As a result, in the summer of 1981, the SBA apparently extended the period of interest-only payments, contingent upon the interest being brought current. *See Affidavit* of David J. Cernak at 1–2 (July 25, 1984) (with exhibits).

By April 6, 1982, the loan was in default in the amount of $5,592.50. *See Affidavit* of Peter Pezewski at 1 (July 25, 1984) (with exhibits). The SBA then requested, as a means of obviating the need for legal action, that Filters make double payments of interest until the default was cured. Apparently, this condition was not met, and, on May 17, 1982, the SBA notified Filters by acceleration letter that the note was immediately due and payable. *See Affidavit* of Anne T. Knauf at 3 (July 24, 1984) (with exhibits).

During the summer of 1982, defendant Bachman met with Peter Pezuski, an SBA loan officer, and agreed to make monthly payments in exchange for the SBA's agreement to set aside its decision regarding acceleration of the note. On October 20, 1982, in the wake of continued payment irregularities, the SBA advised Filters that a deferral of past due principal amounts was possible as a means of returning the loan, at a minimum, to regular status. Defendant Bachman again met with Peter Pezuski during that month. The parties apparently agreed at that time that the past payments would be deferred and that regular monthly payments of principal and interest would continue. However, the terms of this agreement were never met, since Filters made its last payment on September 30, 1982. *See Deposition Transcript* of Susan A. Bachman at 15–16, 18–20 (June 21, 1984).

Throughout this period, defendant Bachman was apparently meeting with members of SCORE, a financial advisory organization sponsored by the SBA. According to the affidavits and deposition transcripts filed in support of and in opposition to the present motion, neither of the parties was ever under the impression that the principal payments on the note were excused, that collection of the full amount would not be pursued, or that defendant Bachman was released from her obligations as guarantor. In fact, in May of 1983, the SBA contacted defendant Bachman in an attempt to bring the loan current. At the time, however, Filters was moving to a new location and no agreement—other than that the parties would discuss the matter again—was reached. *See Deposition* of Susan A. Bachman at 23–25 (June 21, 1984).

On May 12, 1983, the SBA seized Filters' secured assets, pursuant to Wis.Stat. § 409.503. Subsequently, defendant Bachman met with SBA representatives Anne T. Knauf, David J. Cernak, and Jack A. Davis in an attempt to arrive at an agreement regarding redemption; however, no agreement was reached. Pursuant to the promissory note, the SBA then sold the seized collateral for $500.00. On November 8, 1983, a Certified Statement of Account was issued by the SBA, establishing the total indebtedness at $67,687.00.

## THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

The function of a motion for summary judgment pursuant to Rule 56 of the

Federal Rules of Civil Procedure is to permit the trier of fact to pierce the formal allegations in the pleadings and grant relief when it appears from uncontroverted facts set forth in affidavits, depositions, or admissions on file that there are as a matter of fact no genuine issues for trial. *Smith v. Gross*, 604 F.2d 639, 641 (9th Cir.1979); *Mintz v. Mathers Fund, Inc.*, 463 F.2d 495, 498 (7th Cir.1972). In effect, summary judgment is a method of testing in advance of trial, not just bare contentions found in the legal verbiage of the pleadings, but whether there is in actuality any real basis for relief or defense. *Henderson v. Counts*, 544 F.Supp. 149, 153 (E.D.Va. 1982); *Swettlen v. Wagoner Gas & Oil, Inc.*, 369 F.Supp. 893, 894 (W.D.Pa.1974).

Under the appropriate circumstances, summary judgment is a useful procedure for unmasking frivolous claims and for putting a swift end to meritless litigation by preventing useless, expensive, and time-consuming trials. *Quinn v. Syracuse Model Neighborhood Corporation*, 613 F.2d 438, 455 (2d Cir.1980); *Anderson v. Viking Pump Division, Houdaille Industries, Inc.*, 545 F.2d 1127, 1129 (8th Cir. 1976). In this respect, it can be a valuable device for securing a just and expeditious adjudication of the merits of a case, when used judiciously. *Goodman v. Mead Johnson & Company*, 534 F.2d 566, 573 (3d Cir.1976), *cert. denied*, 429 U.S. 1083, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977); *Becker v. Safelite Glass Corporation*, 244 F.Supp. 625, 631 (D.Kan.1965).

At the same time, since the impact of summary judgment is rather drastic, Rule 56 should be invoked cautiously so that no litigant is improperly denied a trial on disputed factual issues. *Watson v. Southern Railroad Company*, 420 F.Supp. 483, 486 (D.S.C.1975); *aff'd*, 542 F.2d 1170 (4th Cir. 1976); *Johnson Foils, Inc. v. Huyck Corporation*, 61 F.R.D. 405, 407 (N.D.N.Y. 1973). Indeed, summary judgment should not be granted unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances. *Prince v. Pittston Company*, 63 F.R.D. 28, 32 (S.D.W.Va.1974); *In re Midwest Milk Monopolization Litigation*, 380 F.Supp. 880, 883 (W.D.Mo.1974). It is sometimes said that a Rule 56 motion in a case where a jury trial has been demanded is properly granted only when it is quite clear what the truth is. *Quadra v. Superior Court of City and County of San Francisco*, 378 F.Supp. 605, 624 (N.D.Cal. 1974); *Port of Palm Beach District v. Goethals*, 104 F.2d 706, 709 (5th Cir.1939).

■ In making its determination as to whether a genuine issue as to any material fact exists for purposes of disposing of a Rule 56 motion, the Court should be mindful, first, that the movant has the burden of showing both the absence of such a genuine issue and its entitlement to judgment as a matter of law and, second, that the evidence must be viewed in the light most favorable to the opposing party. *Carroll v. Getty Oil Company*, 498 F.Supp. 409, 411–412 (D.Del.1980); *Berns v. Civil Service Commission*, 417 F.Supp. 17, 20 (S.D.N.Y.1975), *aff'd in part and rev'd in part on other grounds*, 537 F.2d 714 (2d Cir.1976), *cert. denied*, 430 U.S. 930, 97 S.Ct. 1549, 51 L.Ed.2d 774 (1977). Finally, the disposition of a Rule 56 motion is reversed to the sound discretion of the trial judge, who may reasonably deny such a motion where inquiry into the facts to clarify the application of the law is deemed appropriate. *Toyoshima Corporation of California v. General Footwear, Inc.*, 88 F.R.D. 559, 560 (S.D.N.Y.1980); *Rypkema v. Bowers*, 66 F.R.D. 564, 566 (N.D.W.Va. 1974).

In the entire record of the present case, the Court identifies no material issues of fact suitable for trial. As plaintiff accurately notes, both parties have acknowledged the execution of the subject promissory note and guaranty; the defendant has also conceded that Filters failed to make timely payments under the terms of the note and that she herself has not met the payment obligations imposed upon her as guarantor.

■ Moreover, as the Court has described above, the language of the guaranty is

unequivocal in its statements of affirmative obligation and waiver of rights. According to its express terms, the defendant is liable for the payment of the note's interest and principal by acceleration if the debtor fails to perform. Other provisions expressly provide that the SBA may modify terms and effect forbearances. The defendant-guarantor is not released if the SBA chooses to so act or fails to act; neither is she released if the value of the collateral is incorrectly estimated. Furthermore, the language of the SBA guaranty includes an explicit waiver of the guarantor's right to preservation of the collateral.

The unequivocal nature of the obligations set forth in the guaranty, coupled with the defendant's own concessions as to the execution and substance of that agreement, lead the Court to conclude that there are no material issues of fact for trial and that the plaintiff is entitled to judgment on the note and guaranty as a matter of law. *See United States v. O'Brien*, Case No. 77–C–559 (E.D.Wis.) (unpublished opinion of Judge Myron L. Gordon, February 28, 1979).

## THE DEFENDANT'S AFFIRMATIVE DEFENSES

Despite the undisputed nature of the obligations imposed by the guaranty executed on January 26, 1981, the defendant, as indicated above, argues what she characterizes as equitable and legal defenses based on "such conduct over a period of two years or so to mislead the original obligor to its detriment, that plaintiff should not now be able to assert such breach that would permit it to invoke the warranty." Defendant's *Memorandum In Opposition To Motion For Summary Judgment* at 1 (August 8, 1984).

The Court, for the reasons set forth below, concludes that none of these defenses is sufficiently meritorious to overcome the clear force of the guaranty, upon which the plaintiff is entitled to judgment.

## NOVATION

■ The defendant correctly describes a novation as the substitution of a new agreement for an old one which is thereby extinguished; typically, the extinguishment of the original obligation is viewed as consideration for the new, and the new promise consideration for the release of the old, each being consideration for the other. *Commissioner of Internal Revenue v. Oates*, 207 F.2d 711, 712–713 (7th Cir.1953). Yet the defendant in this case fails to provide evidence of what such a new agreement might have entailed. As noted above, the record does indicate that the parties agreed to a temporary deferral of past principal amounts due in order to afford the defendant an opportunity to maintain, at a minimum, a regular, monthly interest payment. However, according to both parties' affidavits and transcripts, neither understood that these amounts were not to be ultimately paid; nor did either believe that the total indebtedness or the clear terms of the guaranty were substantially amended by these interim payment arrangements. Thus, the Court finds no reasonable basis for the defendant's claim that a completely new agreement between the parties was reached, thus vitiating the unequivocal obligations of the old.

## MODIFICATION

■ The defendant next contends that if no new agreement between the parties was reached, the terms of the guaranty were modified by the parties' conduct and oral representations. To be sure, both state and federal courts have recognized and given effect to modifications of the written terms of contracts under appropriate circumstances. *See generally Kohlenberg v. American Plumbing Supply Company*, 82 Wis.2d 384, 263 N.W.2d 496 (1978); *S & M Rotogravure Service v. Baer*, 77 Wis.2d 454, 252 N.W.2d 913 (1977); *Commissioner of Internal Revenue v. Oates*, 207 F.2d 711 (7th Cir.1953). Although the defendant does not describe clearly the precise modifications she claims were made, the record does indicate that the parties agreed to three sets of arrangements regarding payment—namely, that the interest only period was to be extended beyond the initial seven months for an additional two months, con-

tingent upon regular payments; that the loan, already in default, would not be accelerated if timely payments were forthcoming; and that past principal amounts owed would be deferred if regular monthly interest payments were made.

While these conditional arrangements clearly reflect the SBA's interest in attempting to meet the defendant's particular financial difficulties, nothing about them modifies, in any sense, the fundamental terms of the subject guaranty. As the Court has already observed, the defendant was never told that the original debt or some portion thereof would be excused, that acceleration would not occur while she was in default, or that the plain terms of the guaranty would not be enforced. Under these circumstances, the Court must reject as wholly unfounded the defendant's claim of modification.

## WAIVER AND ESTOPPEL

■ In *Saverslak v. Davis Cleaver-Produce Company*, 606 F.2d 208, 213 (7th Cir.1979), the Court of Appeals for the Seventh Circuit distinguished the concepts of waiver and estoppel this way:

Analysis of the applicability of waiver focuses on the intent of the non-breaching party. If he has intentionally relinquished a known right, either expressly or by conduct inconsistent with an intent to enforce that right, he has waived it and may not therefore seek judicial enforcement [citations omitted]....

Estoppel, on the other hand, focuses not on the obligor's intent, but rather on the effects of his conduct on the obligee.... An estoppel ... arises only when a party's conduct misleads another to believe that a right will not be enforced and causes him to act to his detriment or reliance upon this belief [citations omitted].

The plaintiff in *Saverslak* had alleged the breach of a licensing contract providing that a particular sized trademark would appear in the defendant's product label. During the first few years of the agreement, the plaintiff protested the diminished size of the trademark. However, when the defendant dropped the trademark altogether, thus openly breaching the trademark contract, the plaintiff failed to object until seven years later, when it initiated the civil action. On appeal, the Seventh Circuit held that the plaintiff's "silent acquiescence ripened into an intentional relinquishment of his right to enforce the trademark use." *Saverslak, supra,* at 214.

In the present case, it is clear that the SBA never signaled any intention to relinquish its right to enforce the subject note or the guaranty. Furthermore, the interim payment arrangements made by the parties do not indicate that the plaintiff intended to relinquish any enforcement rights incorporated in the contract; they were, instead, forbearances contingent upon the defendant's compliance—something she apparently did not do. Likewise, the Court simply cannot construe the SBA's so-called silence during the period from October of 1982, until the date of its seizure of the collateral as an intentional relinquishment of its rights under the guaranty. Plainly, the facts of the case do not support the defendant's waiver argument.

■ With respect to the companion assertion of estoppel, the Court finds that the defendant has neither pointed to specific acts or omissions of the plaintiff upon which she relied nor established the nature of the detriment she has suffered. The Court assumes that her argument in this context is premised on the SBA's cooperative attitude in facilitating modifications in the payment schedule and providing her with the resources of SCORE—actions which may have prompted her to believe that seizure would not occur. Yet the defendant was never told that enforcement would not occur, and she plainly knew that all modifications and forbearances were contingent upon her making regular, monthly payments. In short, nothing in the record of this case convinces the Court that the defendant was reasonably estopped from performing under the clear terms of the guaranty.

Finally, to the extent that the defendant invokes general equitable principles in sup-

port of her claim that she should not be held to the plain obligations in the guaranty she executed, the Court finds itself wholly unpersuaded. As it concludes with respect to all of her defenses, the Court views the defendant's position, when considered in the context of the documentary and historical record of this case, totally insufficient to justify denial of the present petition for summary judgment.

## CONCLUSION

For the several reasons articulated above, the Court hereby GRANTS the motion of the plaintiff, United States of America, for summary judgment, pursuant to Rule 56(a) of the Federal Rules of Civil Procedure. Since the Court finds none of the defendant's affirmative defenses to the Government's claim meritorious, it hereby DIRECTS the Clerk of Court to enter judgment in the plaintiff's favor for the principal amount of $60,483.00 plus interest at nine and one-quarter percent (9¼%) to date, for legal interest on the judgment at twelve percent (12%) per annum until paid, and for costs, fees, and disbursements.